**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | |
|---|---|
| THE NATIONAL FEDERATION<br>OF THE BLIND, INC.,<br>200 East Wells Street<br> At Jernigan Place<br>Baltimore, MD 21230, | \*<br>\*<br>\*<br>\* |
| THE NATIONAL FEDERATION OF<br>THE BLIND OF MARYLAND,<br>9013 Nelson Way<br>Columbia, MD 21045, | \*<br>\*<br>\* |
| CYNTHIA MORALES,<br>29 Mercury Court<br>Parkville, MD 21234, | \*<br>\*     Civil Action No.:_____ |
| LINWOOD BOYD,<br>9 Lydia Court<br>Pikesville, MD 21208, | \*<br>\* |
| and | \* |
| MELISSA SHEEDER,<br>2252 Sidney Avenue<br>Baltimore, MD 21230, | \*<br>\*<br>\* |
| Plaintiffs,<br>v. | \*<br>\* |
| WALMART INC.,<br>701 South Walton Boulevard<br>Bentonville, AR 72716, | \*<br>\* |
| **Serve On**:<br>The Corporation Trust, Inc.<br>2405 York Road, Suite 201<br>Lutherville-Timonium, MD 21093, | \*<br>\*<br>\* |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

### **INTRODUCTION**

1.     Plaintiffs the National Federation of the Blind ("NFB"), the National Federation of the Blind of Maryland ("NFB-MD"), Cynthia Morales, Linwood Boyd, and Melissa Sheeder bring this action against Defendant Walmart Inc. ("Walmart") for denying blind customers full and equal enjoyment of its self-service checkout kiosks and broader check-out experience in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. Plaintiffs seek a declaratory judgment, injunctive relief in Maryland and throughout the United States, reasonable attorneys' fees and costs, and any other available relief.

2.     At many of its stores, including but not limited to the Walmart stores located at 9750 Reisterstown Road, Owings Mills, Maryland 21117; 6205 Baltimore National Pike, Catonsville, MD 21228; and 6721 Chesapeake Center Drive, Glen Burnie, MD 21060, Walmart offers its sighted customers two options for checking out at the completion of their shopping: they can check out with the assistance of an employee who operates a register; or they can use a self-service checkout kiosk with a point of sale terminal to scan and pay for their purchases without employee assistance. Because the lines at self-service checkout kiosks are often shorter and move more quickly than the employee-assisted checkout option, many customers opt for the convenience of the self-service checkout kiosks.

3.     Yet blind Walmart shoppers do not have the option of self-service checkout available to all other customers. Although Walmart began using self-service checkout kiosks well after the enactment of the ADA, it failed to ensure that this new technology would be accessible to the blind. Thus, blind Walmart shoppers cannot independently operate the self-

service checkout kiosks, as all other Walmart shoppers can.  Walmart thus deprives its blind shoppers of the same convenient check-out options it offers to all other customers.

4. Plaintiffs, a national blind advocacy organization, its Maryland affiliate, and several blind individuals, seek for themselves or their members the same ability to enjoy, benefit from, and participate in the Walmart checkout experience as Walmart offers to sighted customers.  Absent the relief requested herein, Plaintiffs will continue to be denied full and equal enjoyment of Walmart's self-service checkout kiosks and broader check-out experience.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims arise under the ADA.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred in this judicial district.

## PARTIES

7. The National Federation of the Blind, the oldest and largest national organization of blind persons, is a 501(c)(3) non-profit corporation duly organized under the laws of the District of Columbia and headquartered in Baltimore, Maryland.  It has affiliates in all 50 states, Washington, D.C., and Puerto Rico.  The NFB and its affiliates are widely recognized by the public, Congress, executive agencies of state and federal governments, and the courts as a collective and representative voice on behalf of blind Americans and their families.  The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.  The NFB has many

blind members, including Cynthia Morales, Linwood Boyd, and Melissa Sheeder, who shop at Walmart stores and wish to use the self-service checkout kiosk independently, as all other Walmart shoppers can.

8.  The ultimate purpose of the National Federation of the Blind is the complete integration of the blind into society on a basis of equality.  This objective includes the eradication of legal, economic, and social discrimination.  As part of its mission, and to achieve these goals, the NFB has worked extensively to ensure that the blind have an equal opportunity to participate in commerce by working with manufacturers of automated teller machines ("ATMs") and retailers to ensure that their technology and websites are accessible to the blind.  Indeed, before filing the present lawsuit, the NFB wrote to Walmart in an attempt to work collaboratively to implement accessible self-service checkout technology at Walmart stores.  Unfortunately, Walmart declined the NFB's offer.

9.  The National Federation of the Blind of Maryland is the Maryland state affiliate of the NFB.  The NFB-MD is a 501(c)(3) non-profit corporation made up of approximately 1,000 blind Marylanders and their families and friends.  The NFB-MD has many blind members, including Cynthia Morales, Linwood Boyd, and Melissa Sheeder, who frequently shop at Walmart stores and seek the same opportunity to check out conveniently, quickly, and independently using self-service checkout kiosks as Walmart offers to all other customers.

10. The NFB-MD shares the NFB's mission and purpose, with a focus on issues and organizing at the Maryland state level.  The NFB-MD often works in furtherance of its members' right to participate fully and equally in all aspects of their lives in Maryland, including in retail spaces.  The organization educates members about their right to equal participation in places of public accommodation and has advised members on how to file charges of discrimination with

the Maryland Commission on Civil Rights when they have encountered discrimination in retail establishments.  The NFB-MD has devoted resources to alerting Walmart to the problem of inaccessible self-service checkout kiosks and asking Walmart to work together to find solutions to better serve blind customers.  As with the NFB's offer of assistance, however, Walmart unfortunately declined NFB-MD's offer as well.

11. Cynthia Morales is a blind NFB and NFB-MD member who resides in Parkville, Maryland.  Prior to August 2017, Ms. Morales shopped nearly every weekend at the Walmart located at 9750 Reisterstown Road, Owings Mills, Maryland 21117.  After a Walmart employee stole money from Ms. Morales while supposedly assisting her with the self-service checkout kiosk, Ms. Morales stopped patronizing the Owings Mills Walmart and instead began using the Walmart Supercenter located at 8730 Liberty Rd, Randallstown, MD 21133.  Although she now patronizes the Randallstown Walmart nearly every weekend, Ms. Morales would return to patronizing the Owings Mills Walmart if she could use its self-service checkout kiosks independently.  Ms. Morales would like to use the self-service checkout kiosks because the lines are often shorter or non-existent in comparison to the staffed register lines.

12. Linwood Boyd is a blind NFB and NFB-MD member who resides in Pikesville, Maryland.  Prior to August 2017, Mr. Boyd shopped nearly every weekend at the Walmart located at 9750 Reisterstown Road, Owings Mills, Maryland 21117.  After a Walmart employee stole money from his girlfriend, Ms. Morales, while supposedly assisting her with the self-service checkout kiosk, Mr. Boyd stopped patronizing the Owings Mills Walmart and instead began using the Walmart Supercenter located at 8730 Liberty Rd, Randallstown, MD 21133.  Although Mr. Boyd now patronizes the Randallstown Walmart nearly every weekend, he would return to patronizing the Owings Mills Walmart if he could use its self-service checkout kiosks

independently.  Mr. Boyd would like to use the self-service checkout kiosks because the lines tend to move more quickly than the lines for staff-assisted checkout.

13.    Melissa Sheeder is a blind NFB and NFB-MD member who resides in Baltimore, Maryland.  At least once a week, Ms. Sheeder shops at either the Walmart Supercenter located at 6721 Chesapeake Center Drive, Glen Burnie, MD or the Walmart Supercenter located at 3601 Washington Boulevard, Arbutus, MD.  She typically makes small purchases for grocery items, such as milk for her infant.  During one visit to the Walmart in Glen Burnie in or around July 2018, Ms. Sheeder and a blind friend attempted to check out using a self-service kiosk.  They were unable to operate the kiosk, however, because it was inaccessible.  A Walmart customer service representative directed Ms. Sheeder and her friend to a staff-assisted lane where they waited in a line of several people, delaying their checkout.  There had not been any line at the self-service kiosk.  Ms. Sheeder would like the option of using the self-service checkout kiosks independently to check out more quickly.

14.    Defendant Walmart Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Walmart operates or controls more than 5,000 sales establishments throughout the United States and about 60 sales establishments in Maryland.  Walmart's stores sell a variety of items, including groceries, home goods, and drug store items.  Walmart Supercenters are larger stores that are open 24 hours a day and may contain specialty shops and services, such as local bank branches and garden centers. At many of its stores, including its stores in Owings Mills, Catonsville, and Glen Burnie, Maryland, Walmart offers customers the option of checking out using self-service checkout kiosks.

**FACTUAL ALLEGATIONS**

15. Walmart offers customers the option of using self-service checkout kiosks at many of its stores, including at its Owings Mills, Catonsville, and Glen Burnie, Maryland stores.

16. As currently designed, Walmart's self-service checkout kiosks require sight to use: words and images are displayed visually on the screen, but not announced or described through audio output. The kiosks announce limited information audibly during a transaction, but not enough to allow a blind customer to complete checkout based only on the instructions and information provided audibly. For example, while the kiosks audibly tell customers to insert payment, they do not announce the total amount owed or the cost of each item as it is scanned, even though this information appears visually on the screen. Nor do the kiosks announce the amount of change dispensed when a customer pays with cash, even though this information also appears visually on the screen.

17. Walmart's self-service checkout kiosks also require customers to make selections using touchscreen buttons that cannot be distinguished non-visually by blind customers. For example, to complete a transaction after scanning in all items to be purchased, a customer must press the "pay" button that appears visually on the screen. Yet there is no audible indication from the kiosk as to where this button is located or that it needs to be selected. When a customer selects the "pay" button, the kiosk does not announce audibly that it has been selected.

18. Because Walmart's self-service checkout kiosks are not designed to provide blind customers with the information and inputs necessary to complete a transaction non-visually, blind shoppers cannot use the kiosks independently, as all other shoppers can do.

19. Walmart's inaccessible self-service checkout kiosks leave blind customers like the individual Plaintiffs and other members of the NFB and NFB-MD with a choice between

foregoing the convenience and speed of self-service checkout or obtaining sighted assistance to operate the kiosks for them, which largely negates the convenience of being able to check out quickly and independently.

20. Seeking assistance while checking out on the self-service checkout kiosks also creates unnecessary risks of theft and breaches of privacy. For example, on or about July 30, 2017, Ms. Morales had a Walmart employee assist her with using the self-service checkout kiosk at the Owings Mills Walmart. Ms. Morales handed the employee her debit card and the employee instructed her to enter her pin on the keypad attached to the credit card processing machine. Although Ms. Morales's items totaled only around $80.00, the employee, unbeknownst to Ms. Morales or Mr. Linwood, who accompanied her on this visit, had requested $40 in cash back. This additional transaction was never announced audibly to Ms. Morales or Mr. Linwood. The kiosk did announce that the user should take their money from the machine, which luckily tipped Ms. Morales and Mr. Linwood off that something was not right. Upon leaving the store, they asked a bystander to read the receipt and were told that Ms. Morales had been charged about $120, not the $80 she had expected. After learning that the employee had stolen $40 from her, Ms. Morales reentered the store and eventually, after calling the police, had the stolen money returned. After this incident, Ms. Morales and Mr. Linwood did not want to use the self-service checkout kiosk again if they could not do so independently. They further made the decision to switch their shopping to the Randallstown Walmart Supercenter, rather than their normal Owings Mills location.

21. The NFB-MD and the NFB each wrote to Walmart following this incident to alert Walmart of the problem of inaccessible self-service checkout kiosks and to propose collaborating to find solutions. Yet Walmart insisted that Ms. Morales's experience was caused only by the

poor moral judgment of an employee who disregarded the company's policy of requiring employees who assist blind customers with shopping to escort them to a cashier for checkout. Walmart's response ignores the real issue: the inaccessibility of the self-service checkout kiosk. Had Ms. Morales been able to operate the self-service checkout kiosk independently, she never would have been taken advantage of by someone she was forced to rely upon for sighted assistance. Walmart's response also assumes that blind customers should not have the same convenient choices for checking out as it provides to sighted customers.

22. Walmart does not have to use inaccessible self-service checkout kiosks that exclude blind customers. Readily available technology exists that allows blind consumers to operate various types of kiosks independently. For example, most ATM machines today allow blind individuals to access all information audibly through headphones and to make their selections using a tactile keypad. Airline check-in kiosks and Amtrak ticket kiosks also permit full nonvisual access. Accessible retail point-of-sale machines are also readily available. Making self-checkout kiosks accessible to the blind is not difficult; it simply needs to be planned for in the design phase.

23. Ms. Morales, Mr. Boyd, Ms. Sheeder, and many other members of the NFB and NFB-MD regularly use accessible ATMs, other accessible self-service kiosks, and accessible point-of-sale machines independently, without sacrificing their privacy or placing themselves at risk of theft. As regular Walmart customers, Ms. Morales, Mr. Boyd, and Ms. Sheeder each want the same option of completing the check-out process independently and expeditiously that Walmart offers to all other shoppers. The NFB and NFB-MD want all of their members to have this same full and equal access to the convenience of self-service checkout at Walmart.

## CAUSE OF ACTION
### Violation of Title III of the Americans with Disabilities Act
### 42 U.S.C. §§ 12181-12189

24. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

25. The Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"), guarantees individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182.

26. Title III of the ADA mandates, *inter alia*, that it is unlawful to deny individuals with disabilities "the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of a place of public accommodation, or to provide them with an opportunity "that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(i)-(ii); 28 C.F.R. § 36.202(a)-(b).

27. Title III of the ADA further requires places of public accommodation to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

28. For any facility designed or constructed since 1993, which includes equipment located within a place of public accommodation, Title III of the ADA requires that such new facilities be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.104.

29. Walmart stores, as sales establishments that sell items such as groceries, clothing, and home goods, constitute places of public accommodation pursuant to the ADA, 42 U.S.C. §

12181(7)(E). Because Walmart Inc. owns, leases, or operates Walmart stores, it must abide by the mandates of Title III of the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

30. Ms. Morales, Mr. Boyd, Ms. Sheeder, and other blind members of the NFB and NFB-MD are individuals with disabilities under the ADA.

31. Self-service checkout is a service, facility, privilege, advantage, and/or accommodation provided by Walmart to its customers.

32. Because Plaintiffs or their members cannot independently use Walmart's self-service checkout kiosks as currently designed, Walmart has failed and is failing to meet its obligations to provide blind customers like Plaintiffs or their members full and equal enjoyment of its self-service checkout service, facility, privilege, advantage and/or accommodation. Walmart either excludes Plaintiffs or their members from using the self-service checkout kiosks or denies them an equal opportunity to do so by requiring them to rely on others to operate the kiosks when sighted customers need not seek such assistance.

33. Walmart also violates Title III of the ADA by failing to equip its self-service checkout kiosks with the auxiliary aids and services necessary to provide Plaintiffs or their members with an equal opportunity to use and benefit from the kiosks. Such auxiliary aids and services could include screen access software and tactile guides and controls routinely used in other types of self-service kiosks to provide nonvisual access to information relayed on the screen and to allow for an accessible method of inputting selections.

34. Walmart's self-service checkout kiosks constitute facilities under Title III of the ADA.

35. Although Walmart's self-service checkout kiosks were designed and constructed well after 1993, they are not readily accessible to and usable by Plaintiffs or their members.

36. As a result of Walmart's failure to uphold its obligations under Title III of the ADA, Ms. Morales, Mr. Boyd, Ms. Sheeder, and other blind members of the NFB and NFB-MD have suffered and will continue to suffer irreparable harm: they are relegated to the status of second-class customers who lack the same convenient and often faster option for checkout that Walmart provides to all other customers.

37. The inaccessibility of the self-service checkout kiosks also places blind customers at greater risk of theft and invasions of privacy, as Ms. Morales learned first-hand.

38. Walmart's failure to meet its Title III obligations constitutes an ongoing and continuous violation of the ADA and its supporting regulations.  Unless restrained from doing so, Walmart will continue to violate the ADA.  Unless enjoined, Walmart's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

39. Unless the requested relief is granted, Ms. Morales, Mr. Boyd, Ms. Sheeder, and other blind members of the NFB and NFB-MD will suffer irreparable harm in that they will be discriminated against and denied full and equal enjoyment of all of the services, facilities, privileges, advantages and/or accommodations that Walmart offers.

40. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

41. Ms. Morales, Mr. Boyd, Ms. Sheeder, and other blind members of the NFB and NFB-MD are entitled to injunctive relief in Maryland and throughout the United States, as well as reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Cynthia Morales, Linwood Boyd, Melissa Sheeder, the NFB, and NFB-MD request that this Court enter judgment in their favor and award them the following relief:

a. A permanent injunction prohibiting Walmart from violating the ADA and requiring Walmart to make its self-service checkout kiosks in Maryland and throughout the United States accessible to blind users;

b. A declaration that Walmart has and continues to violate the ADA;

c. An award of Plaintiffs Ms. Morales, Mr. Boyd, Ms. Sheeder, the NFB, and the NFB-MD's reasonable attorneys' fees and costs; and

d. Such other and further relief as the Court may deem just.

Respectfully submitted,

/s/
Eve L. Hill, Fed. Bar No. 19938
Jessica P. Weber, Fed. Bar No. 17893
Chelsea J. Crawford, Fed. Bar No. 19155
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
ehill@browngold.com
jweber@browngold.com
ccrawford@browngold.com

*Counsel for Plaintiffs*

October 25, 2018