**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

THE NATIONAL FEDERATION OF THE
BLIND, INC., *et al.*

          Plaintiffs,

v.

WAL-MART ASSOCIATES, INC.

          Defendant.

Civil Action No.: 18-cv-03301-RDB

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

David G. Barger (Md. Bar No. 14716)
Michelle D. Gambino (admitted pro hac vice)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
Email: bargerd@gtlaw.com
Email: gambinom@gtlaw.com

Dawn A. Ellison (Md. Bar No. 20408)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel: (202) 331-3159
Fax: (202) 331-3101
Email: ellisond@gtlaw.com

Robert S. Fine (admitted pro hac vice)
Robert S. Galbo (admitted pro hac vice)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4100
Miami, Florida 33131
Tel: (305) 579-0500
Fax: (305) 579-0717
Email: FineR@gtlaw.com
Email: GalboR@gtlaw.com

i

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ....................................................................................................... 1

II.  FACTS ........................................................................................................................ 2

III. ARGUMENT .............................................................................................................. 3

    A.   The Court Should Grant Walmart's Motion for Summary Judgment and Deny Plaintiffs' Cross Motion Because Walmart Provides the Required Auxiliary Aids and Services Under the ADA ...................................................................................................... 3

        1.   Walmart Does Not Deny Blind Customers Full and Equal Enjoyment of Self-Checkout Service ........................................................................................... 3

        2.   Plaintiffs' ADA Claim Fails as a Matter of Law Because the Only Relief They Seek—Independently Accessible Kiosks—is Not Required Under the ADA........ 5

        3.   Walmart's Chosen Auxiliary Aid and Service, Qualified Readers, Provides the Level of Privacy Required Under the ADA........................................................... 9

        4.   Employees Acting as Qualified Readers Satisfies Walmart's Obligations Under the ADA and Does Not Defeat the Purpose of Self-Checkout ................................... 12

        5.   Plaintiffs' Expert Admits that Fully Accessible Kiosks (as Defined by Plaintiffs), Would Still Require Assistance from a Walmart Associate, and Her Contemplated Modifications are Based on Standards Other than the ADA ................................ 14

        6.   The Persuasive Commentary from DOJ Supports Walmart's Position that a Qualified Reader Satisfied the ADA in Retail Settings ....................................... 15

        7.   The Injunctive Relief Requested is Not Available to Plaintiffs............................ 16

    B.   Plaintiffs Lack Standing Because They Cannot Demonstrate an Injury in Fact. ......... 19

        1.   The Individual Plaintiffs Did Not Suffer Discrimination Under the ADA to Confer Standing. ......................................................................................................... 19

        2.   The Prudential Limitations Restrict the Corporate Plaintiffs' Organizational Standing and the Corporate Plaintiffs Do Not Otherwise Have Associational Standing. ......................................................................................................... 23

        3.   Plaintiffs Do Not Have Standing To Bring a Nationwide Injunction .................. 26

IV.  CONCLUSION.......................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Shields, Inc. v. BOC Grp.*,
Civil Action No. WN-91-2571, 1992 U.S. Dist. LEXIS 17398 (D. Md. Feb. 28,
1992) ....................................................................................................................................18

*Argenyi v. Creighton Univ.*,
703 F. 3d 441 (8th Cir. 2013) .....................................................................................6, 8, 13

*Ball v. Wal-Mart, Inc.*,
102 F. Supp. 2d 44 (D. Mass. 2000) ...................................................................................10

*Castillo v. Hudson Theatre*,
412 F. Supp. 3d 447 (S.D.N.Y. 2019)..................................................................................22

*Childress v. Fox Assocs., LLC Childress*,
932 F.3d 1165 (8th Cir. 2019) ............................................................................................13

*Childress v. Fox Assocs., LLC*,
No. 4:16 CV 931 CDP, 2018 WL 1858157 (E.D. Mo. Apr. 18, 2018) ..................................13

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) ................................................................................16, 23, 27

*Daniels v. Arcade, L.P.*,
477 Fed. App'x 125 (4th Cir. 2012) ..............................................................................21, 22

*Dicarlo v. Walgreens Boot Alliance, Inc.*,
No. 15-CV-2919 (JPO), 2016 WL 482982 (S.D.N.Y. Feb. 5, 2016) ...............................7, 11

*Dominguez v. Banana Republic, LLC*,
No. 1:19-cv-10171-GHW, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) .........................4, 10

*Equal Rights Center v. Abercrombie & Fitch Co.*,
767 F. Supp. 2d 510 (D. Md. 2010).................................................................................23, 24

*Feldman v. Pro Football, Inc.*,
419 Fed. App'x. 381 (4th Cir. 2011) .........................................................................8, 14, 17

*Feldman v. Pro Football, Inc.*,
579 F. Supp. 2d 697 (D. Md. 2008) *aff'd* 419 Fed. Appx. 381 (4th Cir. 2011).....................17

*Gemini Ins. Co. v. Earth Treks, Inc.*,
260 F. Supp. 3d 467 474 (D. Md. 207) (Bennett, J.) ............................................................18

*Hoyle v. Freightliner, LLC*,
   650 F.3d 321 (4th Cir. 2011) ..................................................................................25

*Huguely v. Clarke*,
   Civil Action No. 7:20cv30021, 2021 U.S. Dist. LEXIS 27832 (W.D. Va. Feb.
   15, 2021) ................................................................................................................25

*Katz v. United States*,
   389 U.S. 347 (1967)...............................................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................26, 27

*Maryland v. Macon*,
   472 U.S. 463 (1985)...............................................................................................10

*Nanni v. Aberdeen Marketplace, Inc.*,
   878 F.3d 447 (4th Cir. 2017) .......................................................................21, 22, 27

*Nat'l All. for Accessibility, Inc. v. Big Lots Stores, Inc.*,
   No. 1:11-cv-941, 2012 U.S. Dist. LEXIS 58200 (M.D.N.C. Apr. 26, 2012) ........27

*National Federation of the Blind v. Lamone*,
   813 F. 3d 494 (4th Cir. 2016) ...............................................................................13

*New v. Lucky Brand Dungarees*,
   Case No. 1:14-cv-20574 (S.D. Fla. Apr. 10, 2014) ...............................................11

*Oliver v. Ralph's Grocery Co.*,
   654 F. 3d 903 (9th Cir. 2011) ...............................................................................25

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
   457 F. 3d 963 (9th Cir. 2006) ...............................................................................25

*Ray Communs., Inc. v. Clear Channel Communs., Inc.*,
   673 F.3d 294 (4th Cir. 2012) ................................................................................18

*S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) ................................................................................23

*Scherr v. Marriott Int'l, Inc.*,
   703 F.3d 1069 (7th Cir. 2013) .........................................................................16, 27

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)...............................................................................................28

*Stephens v. Shuttle Associates, L.L.C.*,
   547 F. Supp. 2d 269 (S.D.NY. 2008)....................................................................20

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................23

*The Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
    265 F.R.D. 235 (D. Md. 2010)...............................................................25

*Thorne v. Boston Mkt. Corp.*,
    469 F. Supp. 3d 130 (S.D.N.Y. 2020).......................................................8

*Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*,
    68 F.R.D. 397 (E.D. Va. 1975) ...............................................................25

*West v. Five Guys Enters., LLC*,
    No. 15-cv-2845, 2016 WL 482981 (S.D.N.Y. Feb. 5, 2016) ................7, 11, 20, 21

*West v. Moe's Franchisor, LLC*,
    No. 15cv2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015).......................... *passim*

## Statutes

42 U.S.C. § 12103(1) ...........................................................................................4

42 U.S.C. § 12182(b)(2) .......................................................................................3

42 U.S.C. § 12182(b)(2)(A)(iii)..........................................................................4, 6

42 U.S.C. § 12182(b)(2)(A)(iv) ............................................................................21

Americans with Disabilities Act Title III, 42 U.S.C. §§ 12181 *et seq*.................. *passim*

## Other Authorities

28 C.F.R. 36.303(b)(2)..........................................................................................8

28 C.F.R. Part 36, App. B, Subpart.....................................................................13

28 C.F.R. Part 36, Appendix C .........................................................................7, 24

28 C.F.R. § 36.104 ...............................................................................................4

28 C.F.R. § 36.213 ...............................................................................................3

28 C.F.R. § 36.303(b)(2)) ......................................................................................4

28 C.F.R. § 36.303(c)(1)(ii) ...............................................................................8, 17

28 C.F.R. § 303(b)(2).............................................................................................2

29 C.F.R. § 36.303(c)(ii).........................................................................................9

v

75 Fed. Reg. 43452-43460 ................................................................................15

Fed. R. Civ. P. 37(c)(1) ...................................................................................25

Fed. R. Civ. P. 56(a) .......................................................................................18

Federal Rule of Civil Procedure 37 ................................................................25

Federal Rule of Civil Procedure 56 ................................................................18

U.S. CONST., Art. III, § 2 ...............................................................................26

## <u>EXHIBITS</u>

| Exhibit | Description |
|---|---|
| A. | Exhibit 11 to Deposition of Ryan Crozier |
| B. | Exhibit 2 to Deposition of Ryan Crozier |
| C. | Plaintiffs' Responses to Interrogatory No. 6 |
| D. | Exhibit 8 to Deposition of Ryan Crozier |
| E. | Exhibit 9 to Deposition of Ryan Crozier |
| F. | NCR Declaration |
| G. | Access Board Notice of Proposed Rulemaking |

Defendant Wal-Mart Associates, Inc. ("Walmart"), by counsel, respectfully submits this reply in support of its Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion (collectively "Opposition") and states as follows:

## I.        INTRODUCTION

Plaintiffs brought suit alleging Walmart violated Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181 *et seq*. because, in their view, Walmart's self-checkouts are not "independently accessible" to blind users. Plaintiffs' proffered expert, Crista Earl, points to various regulations that she admits are "not directly applicable" and opines that Walmart should nevertheless comply with those guidelines to develop and implement an "accessible" self-checkout. Recognizing that the ADA imposes no such obligation on a public accommodation such as Walmart, Plaintiffs' Opposition pivots to the completely unsupported notion that Walmart must implement specific auxiliary aids and services containing requirements of Plaintiffs' choosing and nothing Walmart could otherwise offer satisfies Walmart's obligations under the ADA. According to Plaintiffs, the ***only*** compliant auxiliary aids and services for the self-checkout process at a retail store are "fully accessible" (as defined by the Plaintiffs) self-checkout kiosks. This argument flies in the face of clear regulatory language that the requirement to provide auxiliary aids and services is a "flexible one" and that the public accommodation, here Walmart, decides what auxiliary aids and services to offer, so long as the auxiliary aids and services provide effective communication. While the Opposition pays lip service to these black-letter concepts, Plaintiffs never deviate from their flawed notion that the only way to comply with the ADA is to implement the specific features Plaintiffs propose. Nor do Plaintiffs offer any evidence that Walmart's chosen auxiliary aid and service, associates who act as qualified readers, fails to provide effective communication at self-checkout. As Plaintiffs' entire case premised on a purported

violation that has no foundation in the requirements of the ADA, the court should grant Walmart's Motion for Summary Judgment and deny Plaintiffs' Cross-Motion.

Indeed, it is undisputed that Walmart has chosen to use its associates as qualified readers to satisfy its obligation to provide auxiliary aids and services to customers who are blind so that they are provided with full and equal enjoyment of the benefits offered by Walmart's self-checkout service. The Department of Justice's ("DOJ") specifically identifies qualified readers (such as employees) as an example of an effective auxiliary aid and service for providing effective communication. 28 C.F.R. § 303(b)(2).

Plaintiffs' contentions regarding privacy also ring hollow. Customers who are blind and use Walmart's self-checkout kiosks with a qualified reader are treated no differently than any other customer. Moreover, Plaintiffs themselves use Walmart associates to accompany and assist them while shopping but provide no explanation for seeking to impose a heightened level of privacy when at the self-checkout as compared to walking through the aisles. The only component of the self-checkout process that is inherently private is at the point-of-sale ("POS") device (i.e., the keypad where one enters his or her PIN number), which is not at issue in this case and in any event is undisputedly accessible and private for persons who are blind.

In sum, the only relief Plaintiffs seek, "fully accessible" self-checkout kiosks as they define the term, is simply not required under the ADA and is not an available form of relief under clear Fourth Circuit precedent. The Court should grant Walmart's motion for Summary Judgment and deny Plaintiffs' Cross-Motion.

## II.    FACTS

Walmart adopts by reference and re-incorporates the Statement of Facts set forth in its Memorandum in Support of Defendant's Motion for Summary Judgment on Plaintiffs' Amended

Complaint (ECF No. 87 ("Motion" or "Mot.")). Further, Walmart states that nothing in the factual record demonstrates a genuine dispute as to any material fact that would preclude the Court from granting Walmart's Motion and denying Plaintiffs' Cross-Motion.

### III.   ARGUMENT

#### A.   The Court Should Grant Walmart's Motion for Summary Judgment and Deny Plaintiffs' Cross Motion Because Walmart Provides the Required Auxiliary Aids and Services Under the ADA

##### 1.   Walmart Does Not Deny Blind Customers Full and Equal Enjoyment of Self-Checkout Service

After first arguing standing (which will be addressed below), the Opposition contends Walmart discriminated against Plaintiffs by denying them the opportunity to "participate in or benefit from the goods, services, facilities, privilege, advantages, or accommodations of an entity." Opp. at 23, *citing* 42 U.S.C. § 1212(b)(1)(A)(i). Specifically, Plaintiffs contend that "Walmart's self-checkout kiosks lack the required features that would make them accessible to blind users." Opp. at 23. These supposedly "required features" are identified only by Plaintiffs. The Opposition, however, cites no authority requiring these features to be included in a self-checkout kiosk at a retail store, and, as Plaintiffs' own expert concedes, there is none. Mot., Ex. 11, First Earl Depo. at 54:6-57:20, 59:4-67:14, 70:2-22; Ex. 13, Second Earl Depo. at 9:11-10:2, 25:7-22, 27:7-19. In an attempt to avoid this inescapable reality, Plaintiffs contend that the "specific provisions under 42 U.S.C. § 12182(b)(2) are illustrative." Opp. at. 24. In doing so, Plaintiffs insert obligations into the ADA that simply do not exist and as a result misapply how the more specific provisions control over the more general mandates. 28 C.F.R. § 36.213 ("The specific provisions, including the limitations on those provisions, control over the general provisions where both the specific and general provisions apply.").

3

Plaintiffs also incorrectly contend that 42 U.S.C. § 12182(b)(2)(A)(iii) requires Walmart to implement the exact auxiliary aids and services that Plaintiffs demand, and that if Walmart does not do so, it constitutes discrimination. Opp. at 24. This contention ignores the wide ranging auxiliary aids and services explicitly provided for in the ADA regulations (28 C.F.R. § 36.303(b)(2)), including, but not limited to, ***qualified readers***, so long as these auxiliary aids and services ensure that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.*; *see also* 42 U.S.C. § 12103(1); *Dominguez v. Banana Republic, LLC*, No. 1:19-cv-10171-GHW, 2020 WL 1950496, at *11 n. 8 (S.D.N.Y. Apr. 23, 2020) (finding plaintiff's argument that an auxiliary aid should be "independently accessible" to be a "strange interlude" where the regulations specifically include a qualified reader). There is no dispute that Walmart provides a qualified reader[1] to assist persons who are blind in the self-checkout process. Mot., Ex. 1, Crozier Depo, at 34:13-36:17 and Exhibit 10 thereto. Nor is there any dispute that Walmart has a policy that its self-checkout attendants and hosts are to assist all customers in using the self-checkout kiosks, including customers with disabilities.[2] *See id*. Plaintiffs also have not alleged, nor have they provided any testimony or other evidence demonstrating that Walmart's qualified readers did not provide them with effective communication. *See generally*, Opp.; Am. Compl. (ECF No. 9). Therefore, because it is undisputed that Walmart provides qualified readers – a form

---

[1] Plaintiffs contend there is no evidence in the record about what training or education a person who acts as a "qualified" reader must have. Opp. at 29 n. 3. However, a "qualified reader" is defined as "a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary." 28 C.F.R. § 36.104. To assist a person who is blind with the self-checkout process, the qualified reader only would need to be able to navigate this process. The job descriptions for the position clearly meet these criteria. *See* Mot., Ex. 1, Crozier Dep. Ex. 10; *see also* Exhibit 11 to Crozier Dep., attached hereto as **Exhibit A**.

[2] Plaintiffs misleadingly assert that Walmart does not maintain policies requiring employees to assist blind customers. Opp. at 2, 3. As acknowledged by the Plaintiffs later in the Opposition (Opp. at 28), it is Walmart's policy to assist all of its customers with the self-checkout process, which necessarily includes customers who are blind. *See* Exhibit 2 to Crozier Dep., attached hereto as **Exhibit B**.

of auxiliary aids and services explicitly permitted under the ADA as a means to provide persons who are blind with the full and equal enjoyment of the self-checkout kiosks – Walmart has satisfied its obligations under both the general and more specific mandates of the ADA.

> **2.      Plaintiffs' ADA Claim Fails as a Matter of Law Because the Only Relief They Seek—Independently Accessible Kiosks—is Not Required Under the ADA.**

The Opposition confirms that Plaintiffs seek "nothing short of a fully accessible self-checkout kiosk," and their claim is premised entirely on this sole request for relief. Opp. at 25. The ADA, however, is clear that the choice of auxiliary aid and service rests with the public accommodation and nothing in the ADA requires a public accommodation to implement Plaintiffs' preferred choice.

As the Opposition concedes, the correct analysis begins with the ADA's implementing regulation that states "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure *effective communication* with individuals with disabilities." Opp. at 25 citing 28 C.F.R. § 36.303(c)(1) (emphasis added). Further, and also as cited by Plaintiffs, the implementing regulations provide the following as examples of sufficient auxiliary aids and services: "including '***qualified readers***; . . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision.'" *Id.* citing 28 C.F.R. § 303(b)(2) (emphasis added). As such, by Plaintiffs' own admission, not only are qualified readers permitted under the ADA, they are explicitly provided for in the implementing regulations. Beyond that, the DOJ, (the agency tasked by Congress with enforcing the ADA, including promulgating and enforcing its implementing standards and regulations including, without limitation, in retail settings), identifies qualified readers as appropriate means of providing effective communication in retail settings. *See*

U.S. Dept of Justice, Civil Rights Division, Disability Rights Section, *Effective Communication,* available at https://www.ada.gov/effective-comm.htm (last visited August 27, 2021). By way of example, according to DOJ, reading a menu to a person who is blind allows that person to decide what he or she wishes to order. *Id.*

In an attempt to skirt this fatal flaw, Plaintiffs argue Walmart should use accessible electronic or information technology as an auxiliary aid and service instead of qualified readers because such technology is "more effective" and is the preferred choice of Plaintiffs. Opp. at 26. However, neither of these criteria have any basis in the ADA or any applicable standard or regulation. Even if it were true that Plaintiffs' preferred choice is "more effective," (and Plaintiffs have offered no evidence to prove such a hypotheses), a public accommodation is not required to provide Plaintiffs' or any other customers' preferred choice, nor is it required to provide auxiliary aids and services that are "more effective" or even the most effective. Rather, a public accommodation is only required to "take such steps that may be necessary[3] to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii); *accord* C.F.R. §36.303(c) ("A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."). While Plaintiffs offer no evidence (other than their own say so) that qualified readers are "less effective" than what Plaintiffs propose, even if they were, the ADA's implementing regulations explicitly permit an allegedly "less effective" auxiliary aid and service:

---

[3] Courts have defined "necessary" in this context to mean that "aids are services are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but they nevertheless must afford handicapped persons equal opportunity to gain the same benefit. *Argenyi v. Creighton Univ.,* 703 F. 3d 441, 449 (8th Cir. 2013) (analyzing the term "necessary" in the context of auxiliary aids and services under the ADA).

> The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request. . . .

28 C.F.R. Part 36, Appendix C, analysis for § 36.303. Therefore, Plaintiffs' argument that Walmart should be required to provide a specific auxiliary aid and service that they contend is "more effective" has no basis in the ADA's statute or regulations.

Courts in analogous cases have endorsed several different auxiliary aids that were different than the specific auxiliary aid or service sought. In *West v. Moe's Franchisor, LLC*, No. 15cv2846, 2015 WL 8484567, at *1 (S.D.N.Y. Dec. 9, 2015), the plaintiff alleged that defendant was discriminating against blind individuals because its Coca-Cola "Freestyle" machines "lack adaptive features, such as a screen reader with audio descriptions or tactile buttons used to control commands" and therefore "blind people are unable to use them independently." However, similar to the self-checkout kiosks at issue here, the court stated that "[n]othing in the ADA or its implementing regulations supports [p]laintiffs' argument that Moe's must alter its Freestyle machines in a way that allows blind individuals to retrieve beverages without assistance." *Id.* at *3. And, "under the ADA, effective assistance from Moe's employees acting as 'qualified readers' is sufficient." *Id.; see also Dicarlo v. Walgreens Boot Alliance, Inc.*, No. 15-CV-2919 (JPO), 2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2016) (ADA did not require Walgreens to use Plaintiff's preferred technology that he contended would allow him to operate the Freestyle machine "independently;" rather, Walgreens must provide effective communication such that Plaintiff can enjoy the Freestyle machine, which is satisfied by providing assistance to him in operating the Freestyle machine.); *West v. Five Guys Enters., LLC*, No. 15-cv-2845, 2016 WL 482981, at *1 (S.D.N.Y. Feb. 5, 2016) (same).

Finally, to the extent a particular auxiliary aid and service is Plaintiffs' "preferred choice," this is not the proper inquiry. It is black letter law that the public accommodation (in this case Walmart) can choose what auxiliary aid and service to offer, so long as it provides effective communication. 28 C.F.R. § 36.303(c)(1)(ii). Indeed, "Congress did not intend under title III to impose upon a public accommodation the requirement that it give ***primary consideration*** to the request of the individual with a disability." *Feldman v. Pro Football, Inc.*, 419 Fed. App'x. 381, 394 (4th Cir. 2011) (Beaty, J., dissenting in part) (unpublished) (quoting 28 C.F.R. pt. 36, App. B, Sec. 36.303) (emphasis added). To the contrary,

> When an auxiliary aid of some kind is required, the regulations acknowledge (1) that the type of aid necessary for effective communication inevitably will vary with context and (2) that "[t]he auxiliary aid requirement is a flexible one."  What is more, "full and equal enjoyment" is ***not so capacious as to mean that an individual with a disability must achieve an identical result or level of achievement as persons without a disability***.

*Id.* at 392 (internal citations omitted) (quoting 28 C.F.R. pt. 36 App. B) (emphases added).[4] Walmart chose to provide qualified readers to satisfy its obligations under the ADA. Mot., Ex. 1, Crozier Depo. at 34:13-36:17 and Exhibit 10 thereto. As this this is undisputedly permitted under the ADA (*see* 28 C.F.R. 36.303(b)(2)), Walmart has not violated the ADA, and its summary judgment motion should be granted and Plaintiffs' Cross-Motion should be denied. *Argenyi*, 703 F.3d at 448 (the ADA does "not require institutions to provide all requested auxiliary and services. Instead, [the ADA] requires the responsible parties to provide 'necessary'[5] auxiliary aids and services to individuals with disabilities."). *Accord Thorne v. Boston Mkt. Corp.*, 469 F. Supp. 3d 130, 144-48 (S.D.N.Y. 2020) (Plaintiff is not entitled to choose the auxiliary aid and service).

---

[4] Despite this flexibility, NFB confirmed that the only relief they are seeking is changes to Walmart's self-checkout kiosks. They are not seeking to have Walmart provide additional associate assistance at the self-checkout kiosks and are in fact "indifferent" to such. *See* Mot., Ex. 8 at 46:12-47:14; Mot., Ex. 9, at 62:2-6, 66:16-21, 74:8-13.
[5] See Footnote 3, *supra*.

> **3.   Walmart's Chosen Auxiliary Aid and Service, Qualified Readers, Provides the Level of Privacy Required Under the ADA.**

The Opposition wrongly asserts that Walmart's current auxiliary aids and services violates the ADA because it does not protect the privacy and independence of customers who are blind. Opp. at 27. While the DOJ regulations do require places of public accommodation to consider "the privacy and independence of the individual with a disability," this must be analyzed based on whether a person has an expectation of privacy in a specific endeavor. 29 C.F.R. § 36.303(c)(ii); *West v. Moe's Franchisor, LLC*, No. 15CV2846, 2015 WL 8484567, at *3 (S.D.N.Y. Dec. 9, 2015), 2015 WL 8484567, at *3 ("[W]hile the heightened privacy concerns implicated by the use of ATMs necessitate full independence, the same cannot be said about beverage dispensers.").

Plaintiffs' argument profoundly overreaches with respect to the purportedly private nature of the self-service checkout process at a retail store. In support of this flawed argument, Plaintiffs state that there are a variety of items that a customer might want to keep private and not share with a store employee. Opp. at 27. But a sighted customer who purchases such items using a self-checkout kiosk and needs assistance with scanning or bagging or any other aspect of the self-checkout process is in the exact same position as a blind customer. Even more importantly, Plaintiffs' argument is flatly contradicted by Plaintiffs' own testimony that a Walmart employee typically accompanies them throughout the store when they shop; as part of this assistance the Walmart employee helps Plaintiffs shop including to select items off the shelf from Plaintiffs' shopping list. [6] *See* Mot., Ex. 3, at 22:13-23:5; Mot., Ex. 4, at 28:1-31:16; Mot., Ex. 6, at 36:13-17. *See also* Boyd Answer to Interrogatory No. 6 (explaining "an employee then accompanies me

---

[6] Plaintiffs' Opposition points to testimony by Ms. Sheeder that she sometimes had to wait "hours" for a shopper to assist her. Opp. at 28.  This testimony is irrelevant – even if Ms. Sheeder did at times have to wait for a shopper to assist her in the aisles, that has no bearing on the separate availability of associate assistance at the self-checkout.

through the store as I shop and helps me locate items I have on a list that I printed out before coming to the store"), Morales Answer to Interrogatory No. 6. (explaining "An employee accompanies me through the store as I shop and then we go to the cashier to check out"), and Sheeder Answer to Interrogatory No. 6 (explaining "I go to customer service and ask for an assistant, and they walk through the store and assist me with reading and comparing items."), attached hereto as **Exhibit C**. Plaintiffs offer no explanation for why letting an associate see such items identified on a shopping list or while accompanying Plaintiffs through the store is acceptable but a heightened level of privacy suddenly attaches once they reach the self-checkout kiosk. *See Dominguez*, 2020 WL 1950496, at *11 n. 8 (finding plaintiff's argument that an auxiliary aid should be "independently accessible" to be a "strange interlude" where the regulations specifically include a qualified reader).

The only aspect of the self-checkout that could be private is the payment or POS device (wherein a customer inserts his or her credit card or debit card number or PIN), but that aspect is not at issue in this case and in any event, Plaintiffs' expert stated that Walmart's POS devices are "consistent and compliant—compliant with the guidelines." Mot., Ex. 11, First Earl Depo., at 47:8-12, 50:18-22. As there is nothing inherently "private" about what items a consumer purchases when using a self-checkout kiosk at a retailer such as Walmart, Plaintiffs cannot rely on the phrase "privacy and independence" in the regulation to support their claim. *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (no expectation of privacy in areas of a retail store where public is invited to enter and transact business); *Katz v. United States*, 389 U.S. 347, 351 (1967) (no expectation of privacy over that which "a person knowingly exposes to the public"); *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 51 (D. Mass. 2000) ("Common sense tells us that the act of shopping in a store

involves exposure of the person and the items they purchase" thus surrendering their expectation of privacy in such public areas).

In support of their privacy argument, Plaintiffs also cite to the DOJ's Statement of Interest in *New v. Lucky Brand Dungarees,* Case No. 1:14-cv-20574, (S.D. Fla. Apr. 10, 2014) (ECF No. 19), attached as Exhibit 16 to Walmart's Motion. However, this Statement of Interest underscores the differences in the level of privacy expected in different circumstances. Indeed, the issue in *New* was whether POS devices have to be accessible such that individuals who are blind can enter their personal identification number ("PIN") without identifying their PIN to a third-party. *Id.* at 1. As noted above, that aspect of the self-checkout process is indisputably not at issue in this case, and Plaintiffs' own expert opined that Walmart's POS devices are complaint. It is also readily distinguishable. Unlike the items a consumer purchases at a retailer, "[i]nherent in POS transactions are customers concerns about the confidentiality and security of ***private financial information***." *Id.* at 10 (emphasis added). As such, "considerations such as the security of otherwise confidential banking or financial information are important in determining what auxiliary aid or service would be appropriate." *Id.* at 11. In sum, Plaintiffs' claims are premised on Walmart's self-checkout kiosks other than the POS device in which there is no expectation of privacy and which can be used with the assistance of a Walmart employee acting as qualified reader. And this non-POS aspect of the self-checkout kiosks is otherwise analogous to the employee assisting the blind individual with the "Freestyle" machine in *Moe's* where there were no privacy concerns. *Moe's*, 2015 WL 8484567 at *3; *see also Walgreens,* 2016 WL 482982, at *2; *Five Guys,* 2016 WL 482981 at *1. As there is no basis for an enhanced level of privacy at the self-checkout kiosk for blind individuals as compared to their sighted counterparts, and the POS devices allow blind shoppers to not have to reveal their PIN to strangers, Walmart's use of a

qualified reader as an auxiliary aid and service satisfies the requirements of the ADA as it pertains to privacy.

### 4. Employees Acting as Qualified Readers Satisfies Walmart's Obligations Under the ADA and Does Not Defeat the Purpose of Self-Checkout

The Opposition twists the "purpose" of self-checkout to suit their false narrative that the ADA requires "fully accessible" self-checkout kiosks (as Plaintiffs define it). According to Plaintiffs, the purpose of Walmart's self-checkout service is to provide "an independent checkout option" to its customers and the need for employee assistance "defeats the purpose of self-checkout." Opp. at 29. Plaintiffs are mistaken. To the contrary, Walmart created a specific position dedicated to assisting all customers, whether blind or sighted, when using the self-checkout service. Moreover, that assistance is not, as Plaintiffs contend, for a "limited purpose," such as purchasing restricted items. Opp. at 29. Instead, associates providing assistance are encouraged to proactively offer assistance to all shoppers as to any aspect the self-checkout process, including, without limitation "operating register equipment and assisting with scanning items for customers," "explaining functionality of the registers and current updates," "assisting customers with questions and register prompts," "keying items Universal Product Code (UPC)" and "suspending transactions and completing transactions as needed." *See* Mot., Ex. 1, Crozier Depo, at Exhibit 10 thereto; Exhibit 7 to Crozier Depo., attached hereto as **Exhibit D**; Exhibit 8 to Crozier Depo., attached hereto as **Exhibit E**.

The Opposition further insinuates that the mere existence of associate assistance deprives a customer who is blind of the benefit of the self-checkout in violation of the ADA. Not so. Associate assistance is available to all customers, whether blind or sighted. And, it is undisputed – indeed it is a matter of common sense – that associate assistance at the self-checkout may be

necessary regardless of whether or not the customer is blind or sighted. Therefore, Plaintiffs' argument that they do not receive the benefit of Walmart's self-checkout service goes nowhere. *Argenyi*, 703 F.3d at 449 (holding auxiliary aids and services "are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons," rather auxiliary aids and services are only required such that disabled persons "gain the same benefit"); *see also* 28 C.F.R. Part 36, App. B, Subpart B-General Requirements ("Full and equal enjoyment means the right to participate and to have an equal opportunity to obtain the same results as others to the extent possible with such accommodations as may be required by the Act and these regulations. It does not mean that an individual with a disability must achieve an identical result or level of achievement as persons without a disability.").

To support their incorrect benefit analysis, Plaintiffs attempt to analogize the benefits of Walmart's self-checkout service to the benefit that was denied in *Childress v. Fox Assocs., LLC*, No. 4:16 CV 931 CDP, 2018 WL 1858157, at *1 (E.D. Mo. Apr. 18, 2018), aff'd sub nom. *Childress v. Fox Assocs., LLC Childress*, 932 F.3d 1165 (8th Cir. 2019). However, in *Childress*, the plaintiff, a deaf individual, was unable to experience the full and equal enjoyment of defendant's theater which only offered captioning for one performance on a date decided by the defendant. *Id.* The court held that one performance with captioning on a date selected by the theater, did not provide effective communication to disabled patrons who could not attend on that one day.[7] *Id.* at *5. In contrast, Walmart has not placed any barriers on Plaintiffs' ability to reap the benefits of using the self-checkout kiosks. Since Plaintiffs were able to receive the same

---

[7] Plaintiffs also point to the Fourth Circuit's opinion in *National Federation of the Blind v. Lamone,* 813 F. 3d 494, 506 (4th Cir. 2016) in support of their argument. However, that case is distinguishable because at issue was absentee voting in Maryland's program, an inherently private activity, and defendants did not dispute that persons who are blind could not participate in the absentee voting program without assistance. *Id.* In contrast, there is nothing inherently private about checking out at a retail store such as Walmart and Plaintiffs were not denied the benefit, a faster checkout experience, provided by Walmart's self-checkout service. Therefore, the facts in *Lamone* are inapposite.

benefits afforded to non-disabled customers, Walmart did not violate the ADA and its summary judgment motion should be granted and Plaintiffs' Cross-Motion should be denied. *Feldman,* 419 Fed. App'x. at 391 ("What constitutes 'full and equal enjoyment' of a place of public accommodation's goods, services, facilities, and privileges necessarily varies based on what the place provides visitors and consumers.").

**5.      Plaintiffs' Expert Admits that Fully Accessible Kiosks (as Defined by Plaintiffs), Would Still Require Assistance from a Walmart Associate, and Her Contemplated Modifications are Based on Standards Other than the ADA**

In an attempt to add a layer of legitimacy to their incorrect interpretation of the ADA, Plaintiffs contend that their expert "opined that the kiosks may be modified so that they are capable of private and independent use by blind individuals." Opp. at 31. However, when Plaintiffs' expert was asked whether the implementation of all of her suggestions would eliminate the need for Walmart associates to assist customers at the self-checkout area, she testified "no."[8] Mot., Ex. 11 at 84:3-12. Further, and completely ignored by Plaintiffs, is the fact that Plaintiffs' expert concedes that the standards she applied in her reports are not "directly applicable to the kiosks at issue." Mot., Exs. 10 at 3; 11 at 54:6-57:20, 59:4-67:14, 70:2-22; 12 at 4; 13 at 9:11-10:2, 25:7-22, 27:7-19. Finally, Plaintiffs' assertion that Defendant's expert[9] endorsed Plaintiffs experts' opinions is plainly inaccurate. As Defendant's expert made clear in both his rebuttal report and deposition, the standards which Plaintiffs' expert relied upon in crafting her purported requirements of

---

[8] During discovery in this case, Plaintiffs obtained a declaration from NCR Corporation ("NCR"), one of the largest providers of self-checkouts in the United States and the manufacturer of the majority of the self-checkout kiosks presently in place at Walmart, regarding a solution NCR offers known as "UNAV" that can be used with certain NCR models (R6C) and that Plaintiffs' expert proposes for Walmart to install. Among other things the NCR Declaration explains that UNAV has been configured in only a very small percentage of the of the self-checkouts NCR has shipped in the United States. *See* NCR Declaration, attached hereto as **Exhibit F**, at ¶ 6. The NCR Declaration also explains that the "UNAV" device "interfaces with just the touchscreen." *Id.* at ¶ 9.

[9] Curiously, Plaintiffs move to strike Defendant's expert's opinions while attempting at the same time to use them (albeit in a misleading way) to support their arguments. Walmart has responded separately to Plaintiffs' Motion to Strike.

accessibility are not applicable to self-checkout kiosks at issue and the modifications are not otherwise required by the ADA. *See* Mot., Ex. 14, at 4-5, 14-31; Ex. 15, at 70:11-72:22, 80:10-81:5, 84:11-86:8.

**6.      The Persuasive Commentary from DOJ Supports Walmart's Position that a Qualified Reader Satisfied the ADA in Retail Settings**

Plaintiffs and Walmart are in agreement that the 2010 ADA Standards for accessible design explicitly exempt self-service checkout kiosks by stating "[i]nteractive transaction machines (ITMs), other than ATMs, are not covered by Section 707." 2010 ADA Standards for Accessible Design § 707 Automatic Teller Machines and Fare Machines. However, Plaintiffs then make the illogical leap that DOJ has authored "persuasive commentary" that individuals with disabilities should be provided with the opportunity to use self-service checkout kiosks independently. Opp. at 32. To support this argument, Plaintiffs cite to a ***withdrawn*** 2010 Advanced Notice of Proposed Rulemaking (the "2010 ANPRM") in which the DOJ was soliciting comments on a host of potential modifications to its standards relating to non-fixed equipment and furniture, not just interactive technology machines such as self-service checkout kiosks.[10] Opp. at 32-33. *See* Nondiscrimination on the Basis of Disability by State and Local Governments and Places of Public Accommodation; Equipment and Furniture; ANPRM, 75 Fed. Reg. 43452-43460 (withdrawn),

---

[10] As further proof that the ADA does not require self-checkouts at public accommodations to be "accessible" in the manner – and only the manner – demanded by Plaintiffs, the Architectural and Transportation Barriers Compliance Board, otherwise known as the federal Access Board, has identified on the Spring 2021 Unified Agenda Of Regulatory And Deregulatory Actions (which lists regulatory topics for which each Federal agency currently plans to issue an ANPRM, a Notice of Proposed Rulemaking (NPRM), or a Final Rule within the next 12 months proposing to amend the ADA Disability Guidelines to include accessibility standards for self-service transaction machines and kiosks, which would include the self-checkouts at public accommodations such as Walmart. *See* Spring 2021 Architectural and Transportation Barriers Compliance Board Unified Agenda of Regulatory and Deregulatory Actions, attached hereto as **Exhibit G**. If there already was such a requirement under the ADA, or if there was an obligation to implement the specific auxiliary aids and services that Plaintiffs demand, such rulemaking would not be necessary. Further, if the Access Board were to issue proposed standards (the scope of which are not yet known), any such standards are subject to further review, comment and rulemaking by the DOJ before they could become final.

15

available at https://www.ada.gov/anprm2010/equipment_anprm_2010.htm (last visited August 27, 2021). First, nowhere in the 2010 ANPRM does DOJ state that self-checkout kiosks would be required to have the features that Plaintiffs now contend must be present, and that without them Walmart is in violation of the ADA. *Id.* Second, the 2010 ANPRM was withdrawn and not acted on. *Id.* Third, presently (i.e., after the 2010 ANPRM was withdrawn) the DOJ's website includes qualified readers as an example of providing assistance to a disabled customer. *See* U.S. Dept of Justice, Civil Rights Division, Disability Rights Section, *Effective Communication,* available at https://www.ada.gov/effective-comm.htm (last visited August 27, 2021). Therefore, the withdrawn "guidance" from DOJ does not support Plaintiffs' argument that the ADA requires self-service checkout kiosks to have the specific features they list in the Opposition.

### 7. The Injunctive Relief Requested is Not Available to Plaintiffs

Without citing to any authority whatsoever, the Plaintiffs conclude the Opposition by asking the Court to issue a nationwide injunction to require Walmart to begin installing new self-service checkout kiosks, nationwide, within 180 days with all of the specific features outlined by Plaintiffs as an auxiliary aid and service. Opp. at 34-35. As a preliminary matter, and as discussed further below, not only have Plaintiffs failed to demonstrate nationwide injury, but Plaintiffs did not file this as a class action and, as such, they are not entitled to a nationwide injunction. *Compare Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1212–13 (10th Cir. 2014) (approving a nationwide injunction only after a properly certified class was able to demonstrate nationwide injury), with *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (denying a nationwide injunction after an individual plaintiff was not able to establish nationwide injury).

More importantly, as the ADA regulations and caselaw interpreting them make clear, the specific relief sought by plaintiffs is not available to them. Indeed, the ADA regulations unambiguously state that "the ultimate decision as to what measures to take [with regards to auxiliary aids and services] rests with the public accommodation, provided that the method chosen results in effective communication." 28 C.F.R. § 36.303(c)(1)(ii).  Judge Williams' opinion in *Feldman v. Pro Football, Inc.,* 579 F. Supp. 2d 697, 710 (D. Md. 2008) *aff'd* 419 Fed. Appx. 381 (4th Cir. 2011), is illustrative of this point. In *Feldman,* a group of deaf and hard of hearing plaintiffs sued a professional football team and stadium owner alleging discrimination under the ADA due to lack of equal access to the information and announcements during football games and events. The defendant displayed captioning for most content, but at issue was whether the defendant was also required to provide an auxiliary aid or service with regarding to music played during the game. The court only granted the plaintiffs' motion for summary judgment in part stating "[d]espite Plaintiffs' request, however, the Court will not declare that ***captioning, as opposed to other auxiliary aids or services,*** is required. Defendants correctly argue that the law ***does not dictate what auxiliary services must be provided.***" *Id.* On appeal, the Fourth Circuit explained "[b]ecause the ADA does not dictate a particular auxiliary aid, the court declined to issue an injunction requiring captioning as the means of access for the music lyrics." *Feldman*, 419 F. App'x at 386. Later, the Fourth Circuit affirmed the district court's refusal to specify the nature of the auxiliary aid, stating "[i]n holding that defendants must provide access to lyrics, we emphasize that, like the district court, ***we do not require the auxiliary aids and services to take a particular form.***" *Feldman,* 419 Fed. App'x at 392 (emphasis added). Therefore, pursuant to unambiguous Fourth Circuit precedent, the only relief that Plaintiffs seek – for the Court to order Walmart to modify its kiosks in the manner Plaintiffs desire – is not available to Plaintiffs.

17

Finally, the relief that Plaintiffs ask this Court to order – implement all of Plaintiffs' expert's proposed changes in more than 63,000 self-checkout kiosks, nationwide, in a three-year time period – wholly overlooks the affirmative defenses raised by Walmart, including as to feasibility and undue burden. Under Rule 56, "[a] party may move for summary judgment, ***identifying each claim or defense*** — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Plaintiffs moved for summary judgment on its one claim, but Plaintiffs have not moved for summary judgment on Walmart's affirmative defenses. Nor have they addressed any of these defenses or the underlying facts. A district court may not enter injunctive relief where it has not considered the defendant's affirmative defenses. *See Ray Communs., Inc. v. Clear Channel Communs., Inc*., 673 F.3d 294, 308 (4th Cir. 2012) (reversing district court's order granting summary judgment and entering an injunction where it failed to consider defendant's affirmative defense of laches.) While Walmart contends that the Court should enter summary judgment in Walmart's favor because the relief Plaintiffs seek simply is not available under the ADA and because Walmart clearly complies with the ADA, as set forth above, if the Court is at all inclined to consider some or all of the relief sought by Plaintiffs, the Court should not enter an injunction without first considering whether there are other solutions such as enhancements to associate assistance,[11] and also considering Walmart's affirmative defenses, and giving Walmart the opportunity to present those defenses in the context of the Court's determination of what the ADA requires.[12]

---

[11] There is no evidence that Walmart's associate assistance is insufficient or does comply with the ADA.  Indeed, Plaintiffs have not challenged the sufficiency of Walmart's associate assistance, and, the Corporate Plaintiffs' 30(b)(6) designees testified that no amount of assistance would be good enough. Mot., Ex. 8, Riccobono Depo., 50:8-51:4; Ex. 9, Maneki Depo., 51:21-52:4.

[12] It is for this reason that Walmart previously requested that the issues of liability (if any) and remedies (if any) be bifurcated. *See Gemini Ins. Co. v. Earth Treks, Inc.,* 260 F. Supp. 3d 467 474 (D. Md. 207) (Bennett, J.) (noting bifurcation in case where obligation to defend was at issue); *Air Shields, Inc. v. BOC Grp.,* Civil Action No. WN-91-2571, 1992 U.S. Dist. LEXIS 17398 at *3-5 (D. Md. Feb. 28, 1992) (in patent case, bifurcating liability and

**B.**     **Plaintiffs Lack Standing Because They Cannot Demonstrate an Injury in Fact.**

In addition to the arguments set forth above, the Plaintiffs' ADA claim should also be dismissed for lack of standing.

### 1.     The Individual Plaintiffs Did Not Suffer Discrimination Under the ADA to Confer Standing.

In an attempt to establish a claim under the ADA where none exists, Plaintiffs Morales and Boyd seek to convert an allegedly criminal act into one of discrimination under the ADA despite no discrimination taking place. Specifically, the Opposition contends that the attempt to steal forty dollars from Ms. Morales while she was using a self-checkout kiosk demonstrates that Ms. Morales and Mr. Boyd encountered barriers to Walmart's self-checkout service and were harmed by them. Opp. at 11. However, these facts, even taken as true, do not add up to a violation of the ADA.[13] To the contrary, the self-checkout kiosk audibly told Ms. Morales: "don't forget your cash," which indicated to Ms. Morales that something was wrong, leading her to examine her receipt and learn that $40 was stolen from her  with the result being that Ms. Morales was able to get her money back. Mot., Ex. 3 at 73:11-19.   As such, there can be no genuine dispute that Walmart provided effective communication and thus no discrimination could have occurred.  *Id.*; *see also id.* at 62:10-18. As this is the only incident in which Ms. Morales and Mr. Boyd are claiming discrimination (*i.e.,* the only time they attempted to use the self-checkout kiosks) and the facts do not establish that discrimination took place (*i.e.,* no injury in fact), Ms. Morales and Mr. Boyd do not have

damages phases because a finding that there was no liability would "circumvent the need for a lengthy damages phase, saving the time of the Court, the jurors, the witnesses and the parties."); *see also* D.E. 78, 75-2, 70, 56.

[13] Notably, in this section of the Opposition (pages 11 to 16), Plaintiffs have not and cannot cite to any statutory or regulatory authority demonstrating that an alleged crime constitutes a violation of the ADA.

standing under the ADA.[14] *See Moe's*, 2015 WL 8484567, at *4; *Five Guys*, 2016 WL 482981 at *2.

While Ms. Sheeder claims to shop at Walmart regularly and to have visited the area Walmart stores hundreds of times (Opp. at 14), she describes only a single alleged incident where she was allegedly denied access to Walmart's self-checkout service due to the alleged failure to provide auxiliary aids and services as necessary to provide effective communication. *See* Am. Compl. ¶ 13, *generally*. Ms. Sheeder claims that while her and her friend were having difficulty using the self-checkout kiosks, a Walmart employee directed them to the staffed checkout lanes where they waited in line. *See* Opp. 11. Like Ms. Morales and Mr. Boyd, Ms. Sheeder had never attempted to use the self-service kiosks before or since. Mot., Ex. 6 at 54:3-6.  It is undisputed that the associate who directed Ms. Sheeder and her friend from the self-checkout to staffed checkout aisles acted counter to Walmart's policies and practices of assisting individuals with disabilities utilizing self-checkout. Mot., Ex. 1, Crozier Depo., at Exhibit 10, p.1. Plaintiffs offer nothing to the contrary. However, a single incident in which an employee acted counter to Walmart's policies and practices does not, in and of itself, constitute an ADA violation. *See Stephens v. Shuttle Associates, L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.NY. 2008) ("Here, Stephens alleges an isolated incident in which Gregory allegedly told Stephens to power off her wheelchair without explanation and delayed her transportation approximately forty minutes. Even assuming the allegations in Stephens's Amended Complaint are true and drawing all reasonable inferences in her favor, based only on one isolated incident Stephens has alleged no set of facts to indicate that Transit

---

[14] As noted earlier, each of the Individual Plaintiffs have testified that they have shopped at Walmart stores for many years using Walmart employees to assist them through the aisles and in obtaining items from the shelves, *see* Opp. at 11; Mot., at 14, 15, 27 and Mot., Exs. 6, 7; Ex. C, Plaintiffs Boyd, Sheeder and Morales Answers to Interrogatory No. 6**,** and yet, the Amended Complaint is silent in regard to allegations of lack of effective communication or denial of equal access in that regard. *See* Am. Compl., *generally***.**

Defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals."); *Moe's*, 2015 WL 8484567, at *3 ("Plaintiffs allegations hinge on a single visit to a Moe's restaurant, where they received assistance from a customer, not a restaurant employee. From that isolated incident, no reasonable inference can be drawn that Moe's fails to train its employees to provide effective auxiliary aids and services."); *Five Guys*, 2016 WL 482981 at *2 (dismissing ADA claim involving only one incident where an employee failed to help a customer with disabilities use the Freestyle machine). Since Ms. Sheeder bases her ADA claim on only this one incident, this cannot constitute a violation of the ADA and in turn, she too has not suffered an injury-in-fact to confer standing.

Plaintiffs attempt to skirt clear precedent holding that isolated incidents of failing to offer auxiliary aids and services does not violate the ADA by citing to the Fourth Circuit's holdings in *Daniels v. Arcade, L.P.,* 477 Fed. App'x 125, 129 (4th Cir. 2012) and *Nanni v. Aberdeen Marketplace, Inc.,* 878 F.3d 447, 455 (4th Cir. 2017). Both cases are inapposite. While all three cases involve claims under Title III of the ADA, *Nanni* and *Daniels* sought relief under different provisions of the ADA than that which is now at issue here. Specifically, *Nanni* and *Daniels* alleged violations of the removal of barriers provisions of the ADA pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv). While Plaintiffs' Amended Complaint includes claims under this section, Plaintiffs' expert, Crista Earl, has conceded that these provisions do not impose obligations with respect to self-checkouts at public accommodations; even Plaintiffs themselves disclaim these allegations in their Opposition and, instead, pivot to focus on alleged violations of the auxiliary aids and services provisions of the ADA. D.E. 9, Am. Compl. ¶¶ 34-35; Opp. at 24, 32. This pivot dooms Plaintiffs' reliance on *Nanni* and *Daniels* for standing purposes. While Plaintiffs argue "neither the *Nanni* nor *Daniels* court questioned the extent to which the plaintiffs were injured on

21

past visits to the defendants' place of public accommodation," *see* Opp. at 12, the respective Plaintiffs in *Nanni* and *Daniels* were prohibited from even entering, and then traversing the subject buildings and facilities, with the additional issue in *Daniels* being whether he intended to return to the public accommodation. *Nanni*, 477 Fed. App'x. at 449 (complaint alleged Nanni encountered major obstacles at the Marketplace, that is, barriers to access that pose serious difficulties for disabled individuals who rely on wheelchairs for mobility, including, *inter alia*, inaccessible parking spaces due to excessive slopes, pavement in disrepair, inaccessible curb ramps due to excessive slopes, steep side flares and various routes of travel are inaccessible to disabled persons due to excessive slopes and pavement in disrepair); *Daniels,* 477 Fed. App'x. at 127 and 129 (complaint alleged the property had, *inter alia*, inaccessible entry routes, inaccessible ramps throughout the facility and other amenities that are inaccessible for persons who require the use of a wheelchair).

In contrast here, Plaintiffs have not demonstrated that Walmart's auxiliary aids and services (associate assistance) prohibits them from receiving the benefits of Walmart's self- checkouts; indeed, they don't even allege or offer any evidence that they tried to use associate assistance and it didn't work.[15] This failure of proof is fatal. *See Castillo v. Hudson Theatre*, 412 F. Supp. 3d 447, 452 (S.D.N.Y. 2019) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (claim of no effective communication fails where Plaintiff had not attempted to use auxiliary aid and service)). Moreover, while a single visit to a place of public accommodation may suffice to establish an injury-in-fact where the issue is the denial of access, that is not the case here, where Plaintiffs have not been denied access and can receive the same benefits of Walmart's self-

---

[15] Testimony that Plaintiffs sometimes waited a long time for shopping assistance is not relevant because shopping assistance in the aisles is not the same as the dedicated associate assistance at the self-checkout.

checkout service as their sighted counterparts through the use of associate assistance as an auxiliary aid and service.

> **2.    The Prudential Limitations Restrict the Corporate Plaintiffs' Organizational Standing and the Corporate Plaintiffs Do Not Otherwise Have Associational Standing.**

The Opposition does not dispute that the Corporate Plaintiffs must have either associational standing to sue on behalf of their members or organizational standing in order to sue on their own behalf. They have neither and therefore Walmart should be awarded summary judgment.

The court in *Equal Rights Center v. Abercrombie & Fitch Co.,* 767 F. Supp. 2d 510, 523 (D. Md. 2010) unambiguously held that prudential limitations on standing[16] (i.e., the general prohibition on a litigant raising another person's rights) apply to claims brought under the ADA. As such, in order for the Corporate Plaintiffs to have organizational standing, they must establish that an exception to the prudential limitations applies such (1) that the Corporate Plaintiffs have a "close relationship" to a third party; and (2) the third party faces some obstacle in asserting his or her own right. *Id.* The Opposition attempts to meet this burden by arguing, without any citation, that merely being an advocacy organization is sufficient to establish a "close relationship" between the Corporate Plaintiffs sufficient to confer standing and the third-party (their members), and that their members would face obstacles by attempting to sue "a corporate behemoth like Walmart." Opposition at 21. As to the first, mere membership in an organization cannot confer standing on the organization where the member does not have standing in the first instance. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *S. Walk at Broadlands Homeowner's Ass'n v. Openband*

---

[16] Plaintiffs argue that there is no consensus on whether Title III of the ADA raises prudential limitations on organizational standing. Opposition at 20. Both cases Plaintiffs rely on were later distinguished in *Abercrombie* where the court stated that "prudential standing rules would preclude only a party not directly targeted by discrimination," "no anomalous result would obtain from the application of prudential limitations," and the "absurdity" of applying the limitations is "purely a hypothetical concern." *Abercrombie*, 767 F. Supp. 2d at 522-523.

*at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("To plead representational standing, an organization must allege that (1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." (internal quotation marks and citation omitted)). As to the second, Plaintiffs cite nothing for the argument that the size of a corporation would be considered an "obstacle" for a plaintiff asserting his or her own right. Nor could they as the Individual Plaintiffs have sued Walmart in this litigation. *Equal Rights Center,* 767 F. Supp. 2d at 523 ("Most obviously, the third-party individuals face no impediment to bringing their own suit, as Ciotti's status as a co-plaintiff demonstrates."). Therefore, because the Corporate Plaintiffs cannot satisfy the prudential exceptions, the Corporate Plaintiffs do not have organizational standing.

Further, as the Corporate Plaintiffs acknowledge, in order to have associational standing, they must show that "(a) its members would otherwise have standing to sue in their right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim nor the relief requested requires the participation of individual members in their lawsuit." Opp. at 16 (citing *Hunt v. Washington State Apple Advert. Comm'n.,* 432 U.S. 333, 343 (1977)). The Corporate Plaintiffs cannot satisfy even the first element as set forth above because its members have not suffered discrimination due to Walmart choosing to use qualified readers as a recognized auxiliary aid and service to facilitate effective communication at its self-checkout service as opposed to selecting Plaintiffs' preferred auxiliary aid and service of a having kiosks with certain additional features. *Supra* at Section III.A.1. It is black letter law that Walmart, as the place of public accommodation, may choose which auxiliary aid and service to facilitate effective communication. *See, e.g.,* 28 C.F.R. Part 36, Appendix C, analysis for § 36.303.

The Corporate Plaintiffs further attempt to bolster their allegations of associational standing by offering previously unproduced declarations[17] from additional members outside of Maryland. Opp. Exs. 20-27. However, nothing in the declarations demonstrate an injury in fact or otherwise create an issue of fact as none of the declarants state that they tried using Walmart's self-checkout service with Walmart's qualified readers and were unable to do so or were otherwise prevented from using the self-checkout service with a qualified reader. *Id.* They simply state that they, like the Plaintiffs, would prefer the self-service kiosks have additional features that – in their view – would allow them to be used "independently" by persons who are blind.[18] However, as

_____

[17] Plaintiffs contend that these declarations need not have been produced in discovery because they were work product until Plaintiffs decided to use them in connection with summary judgment briefing well after the close of discovery. The Fourth Circuit has not spoken as to the propriety of withholding signed declarations from witnesses based on claimed work product only to later offer them at summary judgment. *See generally Huguely v. Clarke*, Civil Action No. 7:20cv30021, 2021 U.S. Dist. LEXIS 27832 (W.D. Va. Feb. 15, 2021) (noting that the Fourth Circuit has not ruled on this question). Here, there is no basis to claim work product given that the declarations on their face are statements of fact by the witness rather than statements, mental impressions, or opinions of counsel. *See e.g. The Coryn Group II, LLC v. O.C. Seacrets, Inc.,* 265 F.R.D. 235 (D. Md. 2010) ("The documents are clearly not opinion work product, as they 'do not contain the mental impressions, conclusions or opinions of the attorney . . . [or] fruits of the attorney's mental processes'") (quoting *In re John Doe*, 662 F.2d 1073, 1076 n.2 (4th Cir. 1981)); *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 403 (E.D. Va. 1975) ("Statements and documents which represent the impressions and observations of the witnesses and not those of the attorney or his investigators, are not part of the attorney's 'work product.'"). The declarations also offer testimony beyond the scope of what was disclosed in response to Interrogatories. As such, the Court should not consider these declarations at summary judgment, and Walmart further reserves the right to seek to preclude any of these declarants from testifying at trial. *See* Fed. R. Civ. P. 37(c)(1) (If a party fails to identify a witness, the Court may prohibit the party from using that witness on a motion, at a hearing, or at trial); *see also Hoyle v. Freightliner, LLC* , 650 F.3d 321, 329 (4th Cir. 2011) (concluding that courts have broad discretion to issue sanctions under Rule 37).

Further, the declarations are cited only at page 16-17 of the Opposition and are offered for the sole purpose of attempting to establish associational standing. Thus, if they are considered at all, they should be considered solely for that limited purpose. However, some of the declarations contain other allegations against Walmart related to other purported barriers to access. None of these additional allegations are relevant to adjudicating the issue at hand: whether the self-service kiosks must contain the features described by the Plaintiffs. Additionally, it is improper to raise such allegations in response to a motion for summary judgment. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F. 3d 963, 968 (9th Cir. 2006) ("In response to the motion for summary judgment, Pickern raised issues of ADA violations that went beyond a failure to provide a ramp…[t]he district court did not err by holding that Pickern failed to provide the Appellees with adequate notice of these new allegations."); *see also Oliver v. Ralph's Grocery Co.*, 654 F. 3d 903, 908 (9th Cir. 2011) ("In general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute.").

[18] Many of the declarants also, like Plaintiffs, use associate shopping assistance. Their testimony suffers from the same fatal inconsistency that dooms Plaintiffs' testimony as there is no explanation for why there is a heightened right of privacy with respect to items purchased when at the self-checkout kiosks as compared to in the aisles. *See* Opp. Exs. 20, 22, 24, 25, 26, 27.

stated previously, Plaintiffs not only misuse the term "independently," but Plaintiffs' (and the declarants') preference is not the standard for discrimination under the ADA. Therefore, because the Individual Plaintiffs do not have standing, the Corporate Plaintiffs cannot otherwise obtain associational standing.

Finally, Plaintiffs' previously undisclosed declarations do not support a nationwide injunction.[19]  Indeed, none of the declarants have put forth any evidence demonstrating that they were unable to participate in Walmart's self-checkout service using a qualified reader as an auxiliary aid or service, *supra* at 23, and therefore, the declarants' testimony is not probative as to whether Walmart violates the ADA because the auxiliary aids and services it provides at its self-checkout service does not provide effective communication And, like with Plaintiffs, the declarants' preference is not the standard.  For this reason, the declarations do not confer associational standing and cannot establish a right to any injunctive relief.

### 3.     Plaintiffs Do Not Have Standing To Bring a Nationwide Injunction

Article III of the Constitution specifies that "[t]he Judicial Power shall extend to all Cases . . . [and] Controversies . . . ." U.S. CONST., Art. III, § 2. Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has held that a plaintiff must meet three key requirements to establish standing: the plaintiff must show (1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redress-ability. *Id*. at 560-61. The party invoking federal

---

[19] As noted earlier, Plaintiffs did not file this as case a class action and, as such, they are not entitled to a nationwide injunction.  Belated declaration testimony from persons who are not parties (or even putative class members) does not cure this procedural defect.

jurisdiction bears the burden of establishing these elements. *Id*. "A disabled individual seeking an injunction under the ADA, however, must, like all litigants in federal court, satisfy the case or controversy requirement of Article III." *Nat'l All. for Accessibility, Inc. v. Big Lots Stores, Inc*., No. 1:11-cv-941, 2012 U.S. Dist. LEXIS 58200, at *10-13 (M.D.N.C. Apr. 26, 2012).

In *Scherr*, the Seventh Circuit held that an individual did not have standing to seek a nationwide injunction against all Courtyard Marriott hotels because he alleged an ADA violation at one hotel. *Scherr*, 703 F.3d at 1073-75. Applying *Lujan*, the *Scherr* Court explained that the plaintiff needed to assert an intent to travel to the other Courtyard Marriott hotels to establish the "concrete and particularize and "actual or imminent" injury at those other locations. *Id*. at 1074–1075.

Similarly, the Tenth Circuit held that the class representative on behalf of a nationwide class had standing to seek a nationwide injunction under the ADA. *Colo. Cross-Disability Coal.*, 765 F.3d at 1212. In reaching this conclusion, the court noted, "[w]e have no doubt that if Ms. Farrar were seeking a nationwide injunction in her own right, then she would lack standing to challenge accessibility barriers at stores she never intends to visit." *Id*.

The Fourth Circuit has not considered a similar standing issue, but it has cited *Scherr* approvingly with respect to its standing analysis. *See Nanni*, 878 F.3d at 455. Further, *Sherr* does not engage in novel legal analysis; it merely applies *Lujan*'s well-settled standing principles and is fully consistent with the principle that, to establish standing, an ADA plaintiff must demonstrate an intent to return to the public accommodation. *See id*.

Here, there are no facts showing that any individual Plaintiff has any actual intention of visiting a Walmart outside of the state of Maryland, let alone every Walmart nationwide. As such, they do not have standing and the individual Plaintiffs may not rely on the organizational

defendants in order to do what they cannot. "Mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem," will not confer standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). While a club may represent its injured members, there is no evidence that the Corporate Plaintiffs defendants have members who have been 1) actually injured in every single Walmart in the country and 2) intend to return to every single Walmart in the country. The Constitution is not a technicality, and standing is to be strictly enforced. Plaintiffs do not have standing to seek a nationwide injunction they seek.

## IV.    CONCLUSION

At bottom, the resolution of this action requires the Court to answer a straightforward question: does Title III of the ADA give persons who are blind the right to demand one specific auxiliary aid and service to the exclusions of all others regardless of the preference of the place public accommodation? As stated herein and in the Motion, the overwhelming authority demonstrates that the answer to this question is no. Therefore, the court should grant Walmart's motion for summary judgment on Plaintiffs' Amended Complaint and deny Plaintiffs' cross motion for summary judgment.


Dated: August 27, 2021                                     /s/

                                          David G. Barger (Md. Bar No. 14716)
                                          Michelle D. Gambino (admitted pro hac vice)
                                          GREENBERG TRAURIG, LLP
                                          1750 Tysons Blvd., Suite 1000
                                          McLean, VA 22102
                                          Tel: (703) 749-1300
                                          Fax: (703) 749-1301
                                          Email: bargerd@gtlaw.com
                                          Email: gambinom@gtlaw.com

Dawn A. Ellison (Md. Bar No. 20408)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel: (202) 331-3159
Fax: (202) 331-3101
Email: ellisond@gtlaw.com

Robert S. Fine (admitted pro hac vice)
Robert S. Galbo (admitted pro hac vice)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4100
Miami, Florida 33131
Tel: (305) 579-0500
Fax: (305) 579-0717
Email: FineR@gtlaw.com
Email: GalboR@gtlaw.com

***Counsel for Defendant***

## **CERTIFICATE OF SERVICE**

I certify that on August 27, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of filing (NEF) to all parties of record.


_____/s/_____
David G. Barger